UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL HENRY, on behalf of himself, individually, and on behalf of all others similarly-situated, | |
| Plaintiff, | **COMPLAINT** |
| -against- | **Docket No.:** 18-cv-06830 |
| WESTERN BEEF RETAIL, INC. d/b/a WESTERN BEEF, and CACTUS HOLDINGS, INC., and HORATIO WAGNER, individually, and TIMOTHY KELLAR, individually, | Jury Trial Demanded |
| Defendants. | |

MICHAEL HENRY ("Plaintiff"), on behalf of himself, individually, and on behalf of all others similarly-situated, (collectively as "FLSA Plaintiffs" as that term is defined below), by and through his attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for his Complaint against WESTERN BEEF RETAIL, INC. d/b/a WESTERN BEEF ("WBR"), and CACTUS HOLDINGS, INC. ("Cactus"), (WBR and Cactus, together where appropriate, as "Western Beef"), and HORATIO WAGNER, individually, and TIMOTHY KELLAR, individually, (all four, together where appropriate, as "Defendants"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

1.     This is a civil action for damages and equitable relief based upon violations that Defendants committed of Plaintiff's rights guaranteed to him by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160, N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.2 and/or § 146-1.4; (iii) the NYLL's and the NYCRR's requirement that hospitality

1

employees receive one hour's pay at the minimum wage rate for any day in which their spread of hours exceeds ten, NYCRR tit. 12, § 146-1.6; (iv) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); and (v) any other claim(s) that can be inferred from the facts set forth herein.

2.     On June 14, 2018, Plaintiff and WBR entered into a written agreement to toll the statute of limitations for all of Plaintiff's claims arising under, *inter alia*, the FLSA, the NYLL, and the NYCRR, from June 14, 2018 through July 31, 2018.  Plaintiff and WBR subsequently entered into two consecutive tolling agreements resulting in the tolling of the statute of limitations for these claims from June 14, 2018 through November 30, 2018.

3.     Plaintiff worked for Defendants - - two corporations that together operate a chain of grocery stores throughout New York, New Jersey, and Florida, a store manager, and a district manager - - for twenty-seven years, and most recently, from approximately 2009 until on or around February 3, 2018, as an "Assistant Manager," a managerial position in name only, at two of Defendants' New York stores.  Throughout his employment as an Assistant Manager, and as is relevant herein, from at least June 14, 2012 until on or around February 3, 2018 ("the Relevant Period"), Defendants willfully misclassified Plaintiff as an exempt employee, and accordingly, failed to pay Plaintiff the wages lawfully due to him under the FLSA and the NYLL.  Specifically, during that time, Defendants required Plaintiff to work, and Plaintiff did in fact work, in excess of forty hours for each week or virtually each week, yet Defendants failed to compensate Plaintiff at the rate of one and one-half times his regular rate for pay any hours that Plaintiff worked in excess of forty each week, and instead paid him a flat salary that covered only his first forty hours worked per week.

4.      Additionally, Defendants violated the NYLL and the NYCRR by failing to pay Plaintiff one hour's pay at the minimum wage rate for each day when Plaintiff's shift exceeded ten hours from start to finish, and by failing to provide Plaintiff with accurate wage statements on each payday.

5.      Defendants paid and treated all of their Assistant Managers who worked in any of their New York stores in the same manner.

6.      Accordingly, Plaintiff brings this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of himself, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of Defendants' violations of the FLSA.  Plaintiff brings his claims under New York law on behalf of himself, individually, and on behalf of any FLSA Plaintiff, as that term is defined below, who opts-in to this action.

## JURISDICTION AND VENUE

7.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq.*  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

8.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

9.      At all times during the Relevant Period, Plaintiff worked for Defendants in New York at Western Beef's stores located at 130-35 Merrick Boulevard, Springfield Gardens, New York 11434 ("Springfield Gardens Location") and 1717 Old Dutch Broadway, Elmont, New York

3

11003 ("Elmont Location"), and was an "employee" entitled to protection as defined by the FLSA, the NYLL, and the NYCRR.

10.     At all times during the Relevant Period, Defendant WBR was and is a New York corporation with its principal place of business located at 47-05 Metropolitan Avenue, Ridgewood, New York 11385.

11.     At all times during the Relevant Period, Defendant Cactus was and is a New York corporation with its principal place of business also located at 47-05 Metropolitan Avenue, Ridgewood, New York 11385.

12.     At all times during the Relevant Period, Defendants WBR and Cactus had and have substantially identical, if not completely identical, management, business locations, equipment, customers, supervision, and/or ownership. They intermingled and intermingle financial books and records, operated and operate out of the same primary location, and shared and share managerial employees. As a result of the foregoing, a continuity of operations and/or ownership between WBR and Cactus existed and exists.

13.     At all times during the Relevant Period, Defendant Wagner was and is the Store Manager of the Springfield Gardens Location of Western Beef. In that role, Defendant Wagner personally managed and oversaw the day-to-day operations of the Springfield Gardens Location, and had the power to hire and fire and approve all personnel decisions with respect to all employees, including Assistant Managers, working at that location.

14.     At all times during the Relevant Period, Defendant Kellar was and is a District Manager of Western Beef. In that role, Defendant Kellar, on a day-to-day basis, directly supervised two-to-three Western Beef stores and their employees, including the Springfield Gardens Location.

15.     At all times during the Relevant Period, all Defendants were and are "employers" within the meaning of the FLSA and the NYLL.  Additionally, Western Beef's qualifying annual business exceeded and exceeds $500,000.00, and Western Beef was and is engaged in interstate commerce within the meaning of the FLSA, as it operates multiple locations across New York, New Jersey, and Florida, the combination of which subjects Defendants to the FLSA's overtime requirements as an enterprise.

## COLLECTIVE ACTION ALLEGATIONS

16.     Plaintiff seeks to bring this suit to recover from Defendants unpaid overtime compensation and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of himself, individually, as well as on behalf of those in the following collective:

> Current and former Assistant Managers, who at any time during the applicable FLSA limitations period, performed any work for Defendants at any of Defendants' New York store locations, and who consent to file a claim to recover damages for overtime compensation and liquidated damages that is legally due to them ("FLSA Plaintiffs").

17.     Defendants treated Plaintiff and all FLSA Plaintiffs similarly in that Plaintiff and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; and (5) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty.

18.     At all relevant times, Defendants are and have been aware of the requirements to pay Plaintiff and all FLSA Plaintiffs at an amount equal to the rate of one and one-half times their

11003 ("Elmont Location"), and was an "employee" entitled to protection as defined by the FLSA, the NYLL, and the NYCRR.

10.     At all times during the Relevant Period, Defendant WBR was and is a New York corporation with its principal place of business located at 47-05 Metropolitan Avenue, Ridgewood, New York 11385.

11.     At all times during the Relevant Period, Defendant Cactus was and is a New York corporation with its principal place of business also located at 47-05 Metropolitan Avenue, Ridgewood, New York 11385.

12.     At all times during the Relevant Period, Defendants WBR and Cactus had and have substantially identical, if not completely identical, management, business locations, equipment, customers, supervision, and/or ownership. They intermingled and intermingle financial books and records, operated and operate out of the same primary location, and shared and share managerial employees. As a result of the foregoing, a continuity of operations and/or ownership between WBR and Cactus existed and exists.

13.     At all times during the Relevant Period, Defendant Wagner was and is the Store Manager of the Springfield Gardens Location of Western Beef. In that role, Defendant Wagner personally managed and oversaw the day-to-day operations of the Springfield Gardens Location, and had the power to hire and fire and approve all personnel decisions with respect to all employees, including Assistant Managers, working at that location.

14.     At all times during the Relevant Period, Defendant Kellar was and is a District Manager of Western Beef. In that role, Defendant Kellar, on a day-to-day basis, directly supervised two-to-three Western Beef stores and their employees, including the Springfield Gardens Location.

respective regular rates of pay for all hours worked each workweek beyond forty, yet they purposefully chose and choose not to do so.

19.     Thus, Plaintiff and all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek beyond forty, in violation of the FLSA.

## BACKGROUND FACTS

20.     Western Beef is a New York-based retail company - - comprised of at least the two corporate Defendants named in this action - - which sells various goods and produce that are typically available at grocery stores.  Western Beef operates at least twenty-four stores across New York, New Jersey, and Florida, with the majority located in New York City and Long Island.

21.     Western Beef's stores each contain a deli, in which customers can purchase ready-to-eat foods prepared by Western Beef employees for consumption on the premises.

22.     Each Western Beef store has a Store Manager who manages the day-to-day operations of that particular Western Beef store, including making employee schedules, and who is responsible for hiring and firing employees.  The Store Manager's immediate supervisor is a District Manager, who supervises the operations of two-to-three Western Beef stores.  The District Manager, along with the Store Manager, also monitors employee performance at the District Manager's assigned stores, specifically with respect to employee work hours and the manner in which employees' perform their duties.

23.     In approximately 1991, Plaintiff commenced his employment with Western Beef at the Springfield Gardens Location as a grocery clerk and was employed in this position until in or about 2001.

6

Case 1:18-cv-06830-FB-RML   Document 1   Filed 11/30/18   Page 8 of 15 PageID #: 8

24.     In or about 2001, Western Beef "promoted" Plaintiff to the position of "Frozen Manager," which role he held for three-to-four years, until Western Beef again "promoted" him to the position of "Dairy Manager," which he similarly held for three-to-four years.

25.     In 2009, Western Beef "promoted" Plaintiff once again to the position of "Assistant Manager," which role he held until his resignation on or about February 3, 2018.

26.     Upon his "promotion" to Assistant Manager, Plaintiff began working at the Elmont Location to complete his training for the new role. Plaintiff's training lasted approximately ten months.

27.     Following his training, Plaintiff returned to the Springfield Gardens Location to work as an Assistant Manager.

28.     As an Assistant Manager, Plaintiff's primary duties consisted of ordering items, stocking the grocery shelves, unloading delivery trucks, and helping customers.

29.     Despite his title as "Assistant Manager," Plaintiff did not have any meaningful discretion or managerial responsibilities. For example, he played no role in employee hiring or firing decisions, he did not issue discipline to other employees, and he was not responsible for determining any employee work schedules.

30.     In or around 2011, Plaintiff returned to the Elmont Location to work as an Assistant Manager. His primary duties did not change from when he worked as an Assistant Manager at the Springfield Gardens Location.

31.     A few months later, also in 2011, Plaintiff returned to the Springfield Gardens Location as an Assistant Manager, where he remained until his resignation on or around February 3, 2018. Once again, his primary duties did not change.

7

32.     Shortly thereafter, also in 2011, Defendant Wagner became Store Manager at the Springfield Gardens Location, and thus Plaintiff's day-to-day supervisor. Also, from at least that time and continuing until the end of Plaintiff's employment, Defendant Kellar was the District Manager, whose district included the Springfield Gardens Location.

33.     At all times throughout the Relevant Period, Defendants required Plaintiff to work Monday through Friday, starting his workday at 2:00 p.m. and working until at least 2:00 a.m. the following morning, without permitting him to take a scheduled or uninterrupted break during his shift. During periods around holidays, such as Christmas, the Fourth of July, and Thanksgiving, Plaintiff started his workday at 2:00 p.m. and worked until approximately 3:00 a.m. or 4:00 a.m. the following morning. Thus, by approximation, throughout the Relevant Period, Defendants required Plaintiff to work, and Plaintiff did routinely work, approximately sixty hours each week, and approximately sixty-eight hours during weeks around holidays.

34.     At all times throughout the Relevant Period, Defendants paid Plaintiff a flat annual salary of $57,200.00, amounting to $1,100.00 per week, solely intended to compensate Plaintiff for his first forty hours of work each week, which amounts to a regular hourly rate of $27.50.

35.     Thus, throughout the Relevant Period, Defendants failed to pay Plaintiff at any rate of pay, let alone at the rate of one and one-half times his regular rate of pay, which is $41.50, for any hours that Plaintiff worked per week in excess of forty.

36.     Further, Defendants required Plaintiff to work shifts as described above that exceeded ten hours from start to finish for virtually all of his workdays, yet on those days Defendants failed to pay Plaintiff an additional hour's pay at the applicable minimum wage rate.

37.     By way of example only, during the week of July 16 through July 22, 2017, Defendants required Plaintiff to work, and Plaintiff did in fact work, from 2:00 p.m. until 2:00 a.m.

8

on Monday through Friday of that week, without a scheduled or uninterrupted break during any day, for a total of sixty hours.  In exchange for his work that week, Defendants paid Plaintiff $1,100.00, or $27.50 for his first forty hours of work only and nothing for his hours worked in excess of forty.  Defendants further did not pay Plaintiff an additional hour of pay at the minimum wage rate for any of those days worked.

38.     Defendants paid Plaintiff on a weekly basis.

39.     On each occasion when they paid Plaintiff, Defendants failed to provide Plaintiff with a wage statement that accurately listed, *inter alia*, his actual hours worked for that week, or his regular and overtime rates of pay for all hours worked.

40.     Defendants treated Plaintiff and FLSA Plaintiffs in the manner described herein.

41.     Defendants acted in the manner described herein so as to maximize their profits while minimizing their labor costs and overhead.

42.     Each hour that Plaintiff and FLSA Plaintiffs worked was for Defendants' benefit.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
#### *Unpaid Overtime Under the FLSA*

43.     Plaintiff and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

44.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

45.     As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff and FLSA Plaintiffs are employees within the meaning of the FLSA.

9

46.     As also described above, Plaintiff and FLSA Plaintiffs worked in excess of forty hours in a workweek, yet Defendants failed to compensate Plaintiff and FLSA Plaintiffs in accordance with the FLSA's overtime provisions.

47.     Defendants willfully violated the FLSA.

48.     Plaintiff and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

49.     Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime Under the NYLL and the NYCRR*

50.     Plaintiff, and any FLSA Plaintiff who opts-in to this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

51.     NYLL § 160 and 12 NYCRR § 142-2.2 and/or NYCRR § 146-1.4 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

52.     As described above, Defendants are employers within the meaning of the NYLL and the NYCRR, while Plaintiff, and any FLSA Plaintiff who opts-in to this action, are employees within the meaning of the NYLL and the NYCRR.

53.     As also described above, Plaintiff, and any FLSA Plaintiff who opts-in to this action, worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCRR's overtime provisions.

10

54.     Plaintiff, and any FLSA Plaintiff who opts-in to this action, are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

55.     Plaintiff, and any FLSA Plaintiff who opts-in to this action, are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and the NYCRR's overtime provisions.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Violation of the NYCRR's Spread of Hours Requirement*

56.     Plaintiff, and any FLSA Plaintiff who opts-in to this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

57.     12 NYCRR § 146-1.6 provides that an employee working in the hospitality industry shall receive one hour's pay at the minimum hourly wage rate for any day worked in which the spread of hours exceeds ten.

58.     As described above, Defendants are hospitality employers within the meaning of the NYCRR, while Plaintiff, and any FLSA Plaintiff who opts-in to this action, are employees working in the hospitality industry within the meaning of the NYCRR.

59.     As also described above, Plaintiff, and any FLSA Plaintiff who opts-in to this action, worked days where their spread of hours exceeded ten, yet Defendants failed to compensate them in accordance with the NYCRR's spread-of-hours provisions.

60.     Plaintiff, and any FLSA Plaintiff who opts-in to this action, are entitled to spread-of-hours pay, in the amount of one hour's pay at the then-applicable minimum hourly wage rate, for any day worked in which their spread of hours exceeded ten.

11

61.     Plaintiff, and any FLSA Plaintiff who opts-in to this action, are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYCRR's spread-of-hours provisions.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Furnish Proper Wage Statements in Violation of the NYLL*

61.     Plaintiff, and any FLSA Plaintiff who opts-in to this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

62.     NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

63.     As described above, Defendants, on each payday, failed to furnish Plaintiff, and any FLSA Plaintiff who opts-in to this action, with accurate wage statements containing the criteria required under the NYLL.

64.     Prior to February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff, and any FLSA Plaintiff who opts-in to this action, in the amount of $100 for each workweek after the violation occurred, up to a statutory cap of $2,500.

65.     On or after February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff, and any FLSA Plaintiff who opts-in to this action, in the amount of $250 for each workday after the violation occurred, up to a statutory cap of $5,000.

## DEMAND FOR A JURY TRIAL

66.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff and FLSA Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and FLSA Plaintiffs demand judgment against Defendants as follows:

a.     A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b.     Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.     An order restraining Defendants from any retaliation against Plaintiff and/or FLSA Plaintiffs for participation in any form in this litigation;

d.     Designation of this action as an FLSA collective action on behalf of Plaintiff and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e.     All damages that Plaintiff and FLSA Plaintiffs have sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff and FLSA Plaintiffs would have received but for Defendants' unlawful payment practices;

f.     Liquidated damages and any other statutory penalties as recoverable under the FLSA, the NYLL, and the NYCRR;

g.      Designation of Plaintiff and his counsel as collective action representatives under the FLSA;

h.      Awarding Plaintiff and FLSA Plaintiffs their reasonable attorneys' fees, as well as their costs and disbursements incurred in connection with this action, including expert witness fees and other costs, and an award of a service payment to Plaintiff;

i.      Pre-judgment and post-judgment interest, as provided by law; and

j.      Granting Plaintiff and FLSA Plaintiffs such other and further relief as this Court finds necessary and proper.

Dated: New York, New York
       November 30, 2018

                                    Respectfully submitted,

                                    BORRELLI & ASSOCIATES, P.L.L.C.
                                    *Attorneys for Plaintiff*
                                    655 Third Avenue, Suite 1821
                                    New York, New York 10017
                                    Tel.: (212) 279-5000
                                    Fax: (212) 679-5005

                                    By: _____
                                        JEFFREY R. MAGUIRE (JM 4821)
                                        ALEXANDER T. COLEMAN (AC 8151)
                                        MICHAEL J. BORRELLI (MB 8533)

14